UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DAVID ARTHUR GRIGG,

      Plaintiff,

v.                                  CASE NO. 3:14-cv-1168-J-MCR

CAROLYN W. COLVIN, Commissioner
of the Social Security Administration,

      Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative

decision denying his applications for a period of disability, disability insurance

benefits ("DIB"), and supplemental security income ("SSI").  Plaintiff alleges he

became disabled on September 2, 2010.  (Tr. 187, 189.)  A hearing was held

before the assigned Administrative Law Judge ("ALJ") on May 22, 2013, at which

Plaintiff was represented by an attorney.  (Tr. 76-92.)  The ALJ found Plaintiff not

disabled from September 2, 2010 through July 30, 2013, the date of the

decision.[2]  (Tr. 63-71.)

In reaching the decision, the ALJ found that Plaintiff had the following

severe impairments: degenerative disc disease of the cervical and lumbar spine,

---

[1] The parties consented to the exercise of jurisdiction by a United States
Magistrate Judge.  (Docs. 18, 19.)

[2] Plaintiff had to establish disability on or before December 31, 2013, his date
last insured, in order to be entitled to a period of disability and DIB.  (Tr. 63.)

hypertension, obesity, and history of hernia repair.  (Tr. 65.)  The ALJ also found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work with "a sit-stand option and no overhead work."  (Tr. 66.)

Plaintiff is appealing the Commissioner's decision that he was not disabled from September 2, 2010 through July 30, 2013.  Plaintiff has exhausted his available administrative remedies and the case is properly before the Court.  The Court has reviewed the record, the briefs, and the applicable law.  For the reasons stated herein, the Commissioner's decision is **AFFIRMED**.

## I.   Standard of Review

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th

2

Cir. 1991).  The district court must view the evidence as a whole, taking into

account evidence favorable as well as unfavorable to the decision.  *Foote v.*

*Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d

835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to

determine the reasonableness of the Commissioner's factual findings).

## II.    Discussion

Plaintiff raises several issues on appeal.  First, Plaintiff argues that the new

evidence submitted to the Appeals Council, which included a psychological report

by Philip R. Yates, Ph.D., a vocational report by Richard Grissinger, M.S., C.V.E.,

and records from Dr. Chidi Uche and LSU Health Care Services, was not

adequately considered.  More specifically, Plaintiff argues that the Appeals

Council's denial of review was a "perfunctory adherence" to the ALJ's decision,

and that the Appeals Council failed to consider Plaintiff's intellectual impairment

resulting in slow capacity for performance and his questionable capacity for

sustained performance of competitive work.  Plaintiff also argues that in light of

Dr. Yates's report, the Appeals Council should have considered whether

Plaintiff's impairment either met and/or equaled Listing 12.05C.  Defendant

responds that Plaintiff has failed to show that the new evidence submitted to the

Appeals Council affected the substantial evidence supporting the ALJ's decision.

First, to the extent Plaintiff argues that the Appeals Council's denial of

review was a "perfunctory adherence" to the ALJ's decision, the Court disagrees.

Where, as here, the Appeals Council denies review, it is "not required to provide a detailed rationale for denying review." *Mitchell v. Comm'r, Soc. Sec. Admin.,* 771 F.3d 780, 784 (11th Cir. 2014).  The Appeals Council considered Dr. Uche's records from April 30, 2013 to June 19, 2013, and LSU Health Care records from January 10, 2013 to August 4, 2013, but determined that this information did not provide a basis for changing the ALJ's decision.  (Tr. 2.)  The Appeals Council also looked at Dr. Uche's records from September 10, 2013 to October 10, 2013, Dr. Yates's December 2, 2013 evaluation, and Mr. Grissinger's February 4, 2014 evaluation, but determined that this information did not affect the decision about whether Plaintiff was disabled on or before July 30, 2013 because it was about a later time.[3]  (*Id.*)  The Appeals Council's explanation was sufficient.

Moreover, the new evidence would not have changed the ALJ's decision that Plaintiff was not disabled.  Even with the benefit of the new evidence, Plaintiff has not shown that his impairment either met or equaled Listing 12.05C.  *See* 20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3); *Harris v. Comm'r of Soc. Sec.,* 330 F. App'x 813, 815 (11th Cir. May 22, 2009) (per curiam) ("The claimant has the burden of proving at Step 3 that an impairment meets or equals a listed impairment.").  To meet Listing 12.05, a claimant must show that his impairment satisfies both the diagnostic description of mental retardation in the introductory

---

[3] The Appeals Council also stated: "If you want us to consider whether you were disabled after July 30, 2013, you need to apply again."  (Tr. 2.)

paragraph of Listing 12.05 and any one of the four sets of additional criteria.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A); *Harris*, 330 F. App'x at 815.  The introductory paragraph of Listing 12.05 describes intellectual disability as "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested" before age 22.[4]  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05; *Harris*, 330 F. App'x at 815.  In addition, paragraph C of Listing 12.05 requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05©.

Here, there was no evidence of any mental impairment or intellectual disability in the record prior to the ALJ's decision.  After the ALJ's decision, Dr. Yates evaluated Plaintiff and assessed a full scale IQ score of 67.  (Tr. 12.) Although Dr. Yates opined that Plaintiff showed "overall intellect that is in the Mild range of Mental Retardation," he also opined that Plaintiff did "not show any deficiencies in his adaptive functioning."  (Tr. 15.)  Dr. Yates elaborated that Plaintiff showed "good capacity to learn through verbal means, to have good working memory, his academic skills [were] quite strong in terms of his reading

---

[4] Because "there is a presumption that mental retardation is a condition that remains constant throughout life . . . a claimant need not present evidence that [he] manifested deficits in adaptive functioning prior to the age of twenty-two, when [he] presented evidence of low IQ test results after the age of twenty-two."  *Black v. Astrue*, 678 F. Supp. 2d 1250, 1257 (N.D. Fla. 2010) (quoting *Hodges v. Barnhart*, 276 F.3d 1265, 1266 (11th Cir. 2001)).

abilities, he [was] adequate in spelling and oral reading, but extremely poorly developed in his math computational skills." (*Id.*)  Further, while Dr. Yates noted that occupationally, Plaintiff "would be expected to work slowly but steadily," he also noted that Plaintiff "should be given every opportunity to seek employment," particularly when his physical condition improves.  (Tr. 16.)  Importantly, Dr. Yates's diagnostic impressions included only a mathematics disorder and a learning disorder not otherwise specified.  (*Id.*)

Therefore, to the extent Plaintiff relies on Dr. Yates's opinion to show that his impairment meets or equals Listing 12.05C, this opinion does not show deficits in adaptive functioning as required by the Listing.[5]  In addition, Plaintiff's IQ score is not conclusive of mental retardation to the extent it is inconsistent with other evidence in the record of Plaintiff's daily activities and behavior.  *Black*, 678 F. Supp. 2d at 1259.  The record indicates that Plaintiff completed the twelfth grade, he has a driver's license and previously worked as a pipe fitter (a skilled job) and a lubrication technician (a semi-skilled job), he is able to take care of his own personal needs, such as keeping his medical appointments and taking his medication, and he is able to read and write, all of which support Dr. Yates's opinion that Plaintiff has no deficits in adaptive functioning.  (*See* Tr. 15, 79, 87, 89.)

---

[5] Plaintiff reported to Dr. Yates that he was always in special education classes. (Tr. 10.)  However, participation in special education classes does not necessarily show deficits in adaptive functioning.  *See Harris*, 330 F. App'x at 815.

6

Further, to the extent Plaintiff relies on Mr. Grissinger's vocational report, this report does not render the Commissioner's denial of benefits erroneous.  In the report, Mr. Grissinger opined that Plaintiff was "not a good candidate for employment even in a part-time capacity" as he was "unable to perform competitive work in a sustained manner."  (Tr. 24.)  However, this was an opinion on an issue reserved to the Commissioner and, as such, it was not entitled to any special significance.  20 C.F.R. §§ 404.1527(d), 416.927(d).  In addition, it does not appear that Mr. Grissinger is an acceptable medical source.  Therefore, the Commissioner would not be required to assign and explain the weight given to Mr. Grissinger's opinions or consider these opinions in determining the existence of Plaintiff's impairments.[6]  *McMahon v. Comm'r, Soc. Sec. Admin.*, 583 F. App'x 886, 892 (11th Cir. Sept. 24, 2014) (per curiam).

Finally, with respect to the records from Dr. Uche and LSU Health Care, Plaintiff has not shown how these records would have affected the Commissioner's ultimate decision.  The Court has reviewed these records and finds that together with Dr. Yates's evaluation and Mr. Grissinger's report, they do not render the Commissioner's denial of benefits erroneous.  Therefore, Plaintiff's first argument on appeal is rejected.

Plaintiff's second argument is that the ALJ did not consider how Plaintiff's

---

[6] Mr. Grissinger noted that Plaintiff had "documented disabilities of diabetes, hypertension, back and neck pain, on-going bouts with stomach hernias, and low intellect."  (Tr. 23.)

7

obesity could have contributed to, or exacerbated, his abdominal pain from recurring hernias, back pain associated with L4-5 broad based disc protrusion, obstructive sleep apnea resulting in fatigue, and low lung volumes contributing to poor stamina.[7]  Defendant responds that the ALJ found Plaintiff's obesity to be a severe impairment and properly evaluated it in accordance with SSR 02-1p.

SSR 02-1p provides in relevant part:

> Obesity can cause limitation of function. . . . The combined effects of obesity with other impairments may be greater than might be expected without obesity. . . . When we identify obesity as a medically determinable impairment . . . , we will consider any functional limitations resulting from the obesity in the RFC assessment, in addition to any limitations resulting from any other physical or mental impairments that we identify.

SSR 02-1p.  "However, we will not make assumptions about the severity or functional effects of obesity combined with other impairments.  Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment."  *Id.*  Each case is evaluated "based on the information in the case record."  *Id.*  Further, although the three levels of obesity describe the extent of obesity, "they do not correlate with any specific degree of functional loss."  *Id.*

Here, the ALJ found that Plaintiff's obesity was a severe impairment and stated that "the effect that this condition has on the claimant's overall ability to

---

[7] At the hearing, Plaintiff's weight was 273 pounds and his height was 5'9".  (Tr. 80.)

perform work related functions, either singly or in combination with other impairments, has been considered in accordance with SSR 02-1p." (Tr. 65-66.) Then, in the RFC assessment, the ALJ limited Plaintiff to sedentary work with "a sit-stand option and no overhead work." (Tr. 66.)

There is no indication that the ALJ failed to consider Plaintiff's obesity either singly or in combination with his other impairments. To the contrary, the ALJ expressly stated that he considered it in accordance with SSR 02-1p and found it to be a severe impairment. Moreover, Plaintiff has not shown that his obesity caused any additional limitations beyond those assessed by the ALJ. Although Plaintiff has been diagnosed with obesity, "a 'mere diagnosis . . . says nothing about the severity of the condition.'" *Ward v. Astrue*, 2008 WL 1994978, *3 (M.D. Fla. May 8, 2008). Further, Plaintiff's doctors have not expressed an opinion on the effect of Plaintiff's obesity on his ability to work or on his abdominal pain, back pain, sleep apnea, or low lung volumes. (*See, e.g.*, Tr. 359-62.) Dr. Debra Troiano, a consulting physician who reviewed the records, stated that Plaintiff's "morbid obesity compounds his back complaints." (Tr. 113.) Despite this statement, Dr. Troiano assessed less severe functional limitations than found by the ALJ. (*Compare* Tr. 66 *with* Tr. 112-14.) Therefore, the ALJ properly evaluated Plaintiff's obesity and his decision is supported by substantial evidence.

Plaintiff's final argument is that the ALJ did not properly evaluate the

9

opinions of the non-examining and examining physicians.  To the extent Plaintiff

"is concerned about the potential lack of clarity in distinguishing between Dr.

Troiano's opinion and Mr. Williford's conclusions," which are included in Exhibits

5A and 6A, the Court does not find a reason for concern.  With respect to Dr.

Troiano's non-examining opinion, the ALJ stated that he "has considered the

opinion of the State agency medical consultant who reviewed the record on

reconsideration (Exhibits 5A and 6A)," and accorded it "some weight, as the

doctor is a disability specialist who reviewed the evidence of record and

considered all of the objective facts at the time [s]he rendered [her] opinion." (Tr.

69.)  The ALJ further stated: "However, giving the claimant some benefit of the

doubt, the undersigned has included additional limitations" in the RFC

assessment.  (*Id.*)

Although Exhibits 5A and 6A include the signatures of both Dr. Troiano, a

State agency medical consultant who reviewed the record, and William Williford,

a disability adjudicator/examiner, the ALJ made it clear that he was referring to

"the State agency medical consultant who reviewed the record," *i.e.*, Dr. Troiano.

(*Id.*)  Therefore, the ALJ did not give some weight to Mr. Williford's opinion, but

rather to Dr. Troiano's opinion.[8]  (Doc. 26 at 8.)

Plaintiff is also "concerned about the ALJ's review of the opinions

---

[8] Plaintiff does not seem to argue that the ALJ erred in giving Dr. Troiano's opinion some weight.

expressed by the Commissioner's examining physician, Sigrid Sanchez, M.D."

(Doc. 26 at 9.)  Plaintiff argues that the ALJ erred in accepting portions of Dr.

Sanchez's opinions and rejecting the rest without re-contacting the doctor for

clarification, and in failing to identify the medical source(s) upon which the ALJ

based his RFC assessment.

Contrary to Plaintiff's argument, the ALJ's RFC assessment did not need to

mirror or match the findings or opinions of any particular medical source because

the responsibility for assessing the RFC rests with the ALJ.  *Kopke v. Astrue*,

2012 WL 4903470, *5 (M.D. Fla. Sept. 26, 2012) (report and recommendation

adopted by 2012 WL 4867423 (M.D. Fla. Oct. 15, 2012)).  Here, the ALJ properly

considered the evidence of record and his RFC assessment is supported by

substantial evidence.

Specifically, the ALJ gave "great weight" to Dr. Sanchez's opinions to the

extent they were consistent with the RFC and "little weight" to the extent they

included "greater or additional restrictions," because such restrictions were "not

consistent with the medical evidence of record or supported by the record as a

whole."  (Tr. 69.)  The ALJ explained:

> [T]here is a concern that Dr. Sanchez relied too heavily on the
> claimant's subjective report of his symptoms and limitations,
> uncritically accepting as true most, if not all, of what the claimant
> reported.  However, . . . the claimant's medical complaints have been
> treated conservatively and there is no diagnostic evidence of any
> severe spinal stenosis, herniated nucleus pulposus or neural
> compromise.  In fact, an MRI of the lumbar spine indicated mild

11

lumbar scoliosis and mild spondylotic degenerative changes (Exhibit 4F/32-33).  In October 2011, the claimant's gait was normal.  Straight leg raise in the supine and sitting position was normal, and x-rays of the lumbar spine were normal (Exhibit 2F).  In June 2013, the claimant had 5/5 strength in the upper extremities and lower extremities with no muscle atrophy and no sensory abnormality.

(Tr. 68.)  Also, the ALJ stated that Dr. Sanchez's report "appears to contain inconsistencies," which render her opinion "less persuasive."  (*Id.*)  The ALJ explained:

> In the Medical Source Statement, Dr. Sanchez indicated that the claimant could never handle, finger, or feel.  However, on examination, the claimant's grip strength was normal, and his hand and finger dexterity was intact (Exhibit 5F).  The doctor indicated that the claimant requires the use of a cane to ambulate.  However, on examination, the claimant's gait has been normal (Exhibits 2F and 5F).  What is more, the record does not establish that a hand-held assistive device is medically required pursuant to SSR 96-9p.  To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).

(*Id.*)

The Court finds that the ALJ provided adequate reasons supported by substantial evidence to partially discount Dr. Sanchez's opinions.  Contrary to Plaintiff's position, the ALJ did not have a duty to re-contact Dr. Sanchez for clarification, because the record included sufficient evidence to decide Plaintiff's case.  Although there were inconsistencies in Dr. Sanchez's report, it was the ALJ's responsibility to weigh the evidence and see whether he could determine

whether Plaintiff was disabled based on the available evidence.  *See* 20 C.F.R. §§ 404.1520b, 416.920b.  Because the ALJ apparently determined that he could make a decision based on the record and his decision is supported by substantial evidence, there was no need to seek clarification from Dr. Sanchez.  Based on the foregoing, the Commissioner's decision is due to be affirmed.[9]

Accordingly, it is **ORDERED**:

1.     The Commissioner's decision is **AFFIRMED**.

2.     The Clerk of Court is directed to enter judgment consistent with this Order and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, on January 25, 2016.

_____
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record

---

[9] To the extent Plaintiff raises arguments in the closing summary of his brief, which are not properly developed, such arguments are deemed waived.

13